UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHILIP ZWERLING,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FORD MOTOR COMPANY, et al.,<br><br>　　　　　Defendants. | Case No.  5:19-cv-03622-EJD<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 42 |

Plaintiff Philip Zwerling asserts claims against Defendants Ford Motor Company ("Ford") and Does 1-10 for (1) fraud by omission, and (2) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. Dkt. No. 39. Before the Court is Ford's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Not. of Mot. and Mot. to Dismiss Plf.'s First Am. Compl. under Fed. R. Civ. P. 12(c) by Def. Ford Motor Co. ("Mot."), Dkt. No. 42. The Court finds the motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b). Having considered the parties' written submissions, the Court GRANTS the motion with leave to amend.

**I.      BACKGROUND**

　　**A.      Factual Background**

Defendant Ford is a manufacturer of motor vehicles organized under the laws of Delaware. First Am. Compl. ("FAC") ¶ 4. Zwerling is a current California resident and former Texas resident. *Id.* ¶ 2; Dkt. Nos. 43-1, 43-2, 43-3, 43-4, 43-5 (listing home address for Zwerling in Texas). On October 26, 2013, Zwerling purchased a new 2013 Ford F-350 Super Duty SRW truck

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS

1

from a Texas Ford dealer for a total cash price of $48,949.08. FAC ¶ 6; Dkt. Nos. 43-1, 43-2. In connection with the purchase, Zwerling obtained an express New Vehicle Limited Warranty ("the Warranty"). FAC, Ex. A at 5–15. The Warranty provides that Ford "dealers will, without charge, repair, replace, or adjust all parts on Zwerling's truck that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-suppled materials or factory workmanship." *Id.*, Ex. A at 9. The bumper-to-bumper coverage lasts for three years or 36,000 miles, whichever occurs first. *Id.*, Ex. A at 8. The Warranty further provides an extended coverage period of five years or 60,000 miles, whichever occurs first, for the powertrain or engine components. *Id.*, Ex. A at 10. The Warranty also provides an extended coverage period of five years or 100,000 miles, whichever occurs first, for the truck's direct injection diesel engine and certain components. *Id.*, Ex. A at 11–12. The Warranty specifically notes "all questions regarding [its] enforceability and interpretation are governed by the law of the state in which you purchased your Ford vehicle." *Id.*, Ex. A at 7.

On November 1, 2013—six days after purchase—with 369 miles on the odometer, Zwerling presented the truck to an authorized Ford repair facility because the check engine light came on. *Id.* ¶ 9; Dkt. No. 43-3. The repair technician found the diesel exhaust fluid ("DEF") line was damaged and replaced it. FAC ¶ 9; Dkt. No. 43-3.

On January 10, 2014—approximately two and a half months after purchase—with 2,876 miles on the odometer, Zwerling presented the truck to an authorized Ford repair facility because the check engine light came on. FAC ¶ 10; Dkt. No. 43-4. The repair technician replaced the exhaust gas temperature sensor and pigtail. FAC ¶ 10; Dkt. No. 43-4.

On April 17, 2015, with 8,428 miles on the odometer, Zwerling presented the truck to an authorized Ford repair facility for general maintenance and to address Recall 14E03 to reprogram the powertrain control module. FAC ¶ 11; Dkt. No. 43-5.

On April 24, 2018, with approximately 26,085 miles on the odometer, Zwerling presented the truck to an authorized Ford repair facility because the check engine light came on. The repair technician "concluded the issue was related to the exhaust emissions system and fluid was added."

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
2

FAC ¶ 12.

On October 23, 2018, with approximately 30,656 miles on the odometer, Zwerling presented the truck to a third-party dealer complaining of a leak under the vehicle. *Id.* ¶ 13. The repair technician observed a coolant leak and replaced the water pump, charging Zwerling $1,203.83. *Id.*

Three days later, on October 26, 2018—exactly five years from the day of purchase—Zwerling had the truck towed to an authorized Ford repair facility in California. *Id.* ¶ 14. He complained that he had been driving when he heard a noise and the truck lost power. *Id.* The wrench light came on, and the engine lost power and then died. *Id.* The repair technician discovered, among other things, that the "exhaust system is completely plugged/restricted." *Id.* The technician replaced the diesel particulate filter, the selective catalytic converter, CAC tube, diesel filter assembly, exhaust gas temperature sensor, and gaskets. *Id.*

Ten days later, on November 5, 2018, Zwerling presented the truck to an authorized Ford repair facility because the check engine light came on. *Id.* ¶ 15. The repair technician removed and inspected the DEF tank and replaced the reductant sender. *Id.*

Sometime in January 2019, Zwerling contacted Ford, asserting that the truck was a lemon and requesting that Ford take it back in compliance with lemon law obligations. *Id.* ¶ 16. Ford did not do so. *Id.* Zwerling believes that his truck suffers from "one or more defects that can result in, among other problems, loss of power and/or stalling" ("the Engine Defect"). *Id.* ¶ 20.

### B. Procedural Background

On May 6, 2019, Zwerling filed this action in the Superior Court for the County of Santa Clara, asserting violations of California's Song-Beverly Warranty Act ("SBWA"), fraud by omission, and negligent repair against Ford and Keller Ford Lincoln, a Ford dealership and servicer. Dkt. No. 1-2. On June 21, 2019, Ford removed the action to federal court. Dkt. No. 1. On May 18, 2021, Zwerling filed the operative First Amended Complaint ("FAC") pursuant to the parties' stipulation. Dkt. No. 39. The FAC dropped Keller Ford Lincoln and the SBWA claims. *See id.* It also added a claim for violation of Magnuson-Moss Warranty Act ("MMWA") through

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
3

1   breach of express and implied warranties, for which Zwerling seeks remedies permitted under the

2   SBWA. *Id.* ¶ 61, Prayer ¶¶ c, h. On August 27, 2021, Ford filed the motion for judgment on the

3   pleadings now before the Court. Dkt. No. 42.

4   **II.    LEGAL STANDARD**

5       **A.    Rule 12(c)**

6       "After the pleadings are closed—but early enough not to delay trial—a party may move for

7   judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly

8   granted when, accepting all factual allegations in the complaint as true, there is no issue of

9   material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez*

10  *v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation marks

11  omitted). Like a motion to dismiss under Rule 12(b)(6), a motion under Rule 12(c) challenges the

12  legal sufficiency of the claims asserted in the complaint. *See id.* Indeed, a Rule 12(c) motion is

13  "functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard." *Dworkin*

14  *v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the "principal

15  difference" between Rule 12(b)(6) and Rule 12(c) "is the timing of filing"); *see also U.S. ex rel.*

16  *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

17      In considering the motion, the Court assumes the complaint's allegations truth and draws

18  all reasonable inferences in the non-movant's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th

19  Cir. 2004). Like a motion under Rule 12(b)(6), in addition to considering the allegations of the

20  complaint, the Court may also consider materials subject to judicial notice. *Heliotrope Gen., Inc.*

21  *v. Ford Motor Co.*, 189 F.3d 971, 981 (9th Cir. 1999). A Rule 12(c) motion for judgment on the

22  pleadings may thus be granted if, after assessing both the complaint and matters subject to judicial

23  notice, it appears "beyond doubt that the [non-moving party] cannot prove any facts that would

24  support his claim for relief." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating*

25  *Eng'rs, Local 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). Dismissal under Rule 12(c) is

26  proper if the complaint shows on its face that it is time-barred by the applicable statute of

27  limitations. *Hunt v. Cty. of Shasta*, 225 Cal. App. 3d 432, 440 (1990); *see also Yetter v. Ford*

28  Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
4

United States District Court
Northern District of California

*Motor Company*, 428 F. Supp. 3d 210, 231 (N.D. Cal. 2019).

Although Rule 12(c) makes no mention of leave to amend, "courts have discretion both to grant a Rule 12(c) motion with leave to amend . . . and to simply grant dismissal of the action instead of entry of judgment." *Mitchell v. Corelogic, Inc.*, No. SA 17-CV-2274-DOC (DFMx), 2019 WL 7172978, at *4 (C.D. Cal. Nov. 20, 2019) (citing *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997) and *Moran v. Peralta Cmty. College Dist.*, 825 F. Supp. 891, 893 (N.D. Cal. 1993)); *see also Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131, 1134-35 (9th Cir. 2012) (affirming district court's dismissal under Rule 12(c) but reversing for failure to grant leave to amend). Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When granting judgment on the pleadings, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted).

### B.     Rule 9(b)

Consumer protection claims that sound in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1084 (N.D. Cal. 2018). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The circumstances constituting the fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Therefore, a party alleging fraud must set forth "the who, what, when, where, and how" of the misconduct. *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). "[I]n a case where fraud is

not an essential element of a claim, only allegations . . . of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)" while "[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Id.* at 1104–05.

With respect to Plaintiffs' omissions-based fraud claims, "the pleading standard is lowered on account of the reduced ability in an omission suit 'to specify the time, place, and specific content, relative to a claim involving affirmative misrepresentations.'" *Barrett v. Apple Inc.*, No. 5:20-cv-04812-EJD, 2021 WL 827235, at *7 (N.D. Cal. Mar. 4, 2021) (quoting *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008)); *see also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007).

## III.   DISCUSSION

### A.   Requests for Judicial Notice

"Because motions for judgment on the pleadings are 'functionally identical' to Rule 12(b)(6) motions, when ruling on either type of motion 'courts must consider the complaint in its entirety, as well as other sources . . ., in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Webb v. Trader Joe's Co.*, 999 F.3d 1196 (9th Cir. 2021) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Cafasso*, 637 F.3d at 1054 n.4) (internal quotation marks and citations omitted). A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Likewise, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)).

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
6

1    Ford requests that the Court take judicial notice of the following documents: (1) the sales
2    contract and purchase order for Zwerling's truck; (2) receipts for repairs on November 1, 2013,
3    January 10, 2014, and April 17, 2015; (3) Zwerling's original complaint in this action; and (4) the
4    plaintiff's opposition to defendant FCA US LLC's motion for judgment on the pleadings in
5    *Scherer v. FCA US LLC et al.*, No. 3:20-cv-02009-AJB-BLM, Dkt. No. 23 (S.D. Cal. Mar. 31,
6    2021). Dkt. Nos. 43, 65. Zwerling requests that the Court take judicial notice of the Southern
7    District of California's October 4, 2021 order denying FCA US LLC's motion for judgment on the
8    pleadings in *Scherer*. Dkt. No. 63. Neither party opposes the other's request for judicial notice.

     The Court GRANTS Ford's request for judicial notice as to the sales contract and purchase
     order and the receipts for repairs as documents incorporated by reference in the complaint. FAC
     ¶¶ 6, 9-11; *Khoja*, 899 F.3d at 998. The Court DENIES AS MOOT Ford's request for judicial
     notice as to the original complaint because that document is already part of the record in this
     action. *See* Dkt. No. 1-2. The Court further DENIES the parties' requests for judicial notice as to
     the *Scherer* documents because they are not necessary to the Court's resolution of Ford's motion.

### B.     Applicable State Law

As a threshold matter, the parties dispute which state's law applies to Zwerling's claims: Ford contends that Texas law applies based on the Warranty's choice of law provision and California choice of law jurisprudence favoring "the place of the wrong." Mot. at 1, 6–7, 11. Zwerling argues that Ford has conceded application of California law by failing to engage in the necessary three-step governmental interest test. Plf.'s Opp'n to Def.'s Mot. for J. on the Pleadings ("Opp'n"), Dkt. No. 62 at 3–5. The Court considers both arguments in turn, beginning with the governmental interest test.

#### 1.     Governmental interest test

A federal court's selection of the proper choice-of-law rules turns on the type of subject-matter jurisdiction that the court is exercising. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) ("When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law."); *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1297

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
7

(9th Cir. 1997) ("Federal common law applies to choice-of-law determinations in cases based on federal question jurisdiction . . . ."); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996) ("In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state . . . .").

The Court assumes for the sake of argument that diversity jurisdiction[1] applies here and thus looks to California's choice of law rules.[2] *Patton*, 276 F.3d at 495. "By default, California courts apply California law unless a party litigant timely invokes the law of a foreign state, in which case it is the foreign law proponent who must shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) (en banc) (internal quotation marks and citations omitted). To meet its burden, Ford must satisfy California's three-step governmental interest test used to resolve choice of law issues:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the

---

[1] The FAC is devoid of any allegations directly addressing subject matter jurisdiction. The Court infers that the amount in controversy pled likely exceeds $75,000 because Zwerling seeks actual and punitive damages (presumably including the cash cost of the truck), as well as attorneys' fees and civil penalties under the SBWA. *See Laky v. Ford Motor Co.*, No. 5:19-cv-05546-EJD, 2021 WL 252694 (N.D. Cal. Jan. 26, 2021); *Pestarino v. Ford Motor Co.*, No. 19-cv-07890-BLF, 2020 WL 1904590, at *3 (N.D. Cal. Apr. 17, 2020); *see also* Dkt. No. 1 (Ford's notice of removal).

[2] Zwerling's MMWA claim also suggests federal question jurisdiction, in which case federal common law would apply. *Chan*, 123 F.3d at 1297. Federal common law follows the approach of the Restatement (Second) of Conflicts of Laws, in which case Texas law would apply. *Id.* (citing Restatement (Second) of Conflicts of Laws § 187(3) & cmt. h (1988)); *see infra* Section III.B.2 (discussing California law's application of the Restatement of Conflicts of Law § 187(2) where warranty contains an express choice of law provision). To the extent the Court could exercise supplemental jurisdiction over the fraud by omission claim, California choice-of-law rules would apply, and the Court would proceed with the governmental interest test. *Paracor*, 96 F.3d at 1164).

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
8

> application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

*Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 928 (9th Cir. 2019) (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006)). "Only if both [jurisdictions] have a legitimate but conflicting interest in applying its own law will the court be confronted with a 'true conflict' case." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010).

Zwerling argues that Ford has not timely invoked Texas law because its motion does not expressly recite the governmental interest test. Opp'n at 3–5. He relies solely on a decision from the Southern District of California, *Scherer v. FCA US LLC*, for the proposition that failure to engage in the governmental interest test results in a concession that California law applies. *Id.* (citing ---F. Supp. 3d. ----, 2021 WL 4621692 (S.D. Cal. 2021)). To the extent *Scherer* even stands for such a proposition, that case is not binding, and moreover, it is distinguishable. The *Scherer* court based its ruling on the fact that the defendant only argued that Virginia law should apply based on the defendant's *belief* that the plaintiffs were Virginia residents at the time of purchase. 2021 WL 4621692, at *8–9. Here, there is undisputed evidence before the Court that Zwerling purchased and sought repairs for his truck in Texas while living in Texas. *See* Dkt. Nos. 43-1, 43-2, 43-3, 43-4, 43-5. Additionally, it does not appear that the *Scherer* warranty included a choice of law provision such as the one here. At any rate, Ford's papers reference California choice of law cases and address the differences between Texas and California law and the states' competing interests in adjudicating this action. *See* Mot. at 6–10, 13–14, 17–20; Reply of Def. Ford Motor Co. in Supp. of Mot. to Dismiss ("Reply"), Dkt. No. 64, at 2–4. Ford has therefore addressed the governmental interest test in substance, if not in form.

The Court proceeds with the governmental interest analysis. At immediate issue for the purposes of this motion are the states' respective statutes of limitation. At the first step, the Court notes that the Texas statute of limitation for a fraud by omission claim is four years, whereas California's statute of limitation is three years. *Compare Stevens v. Ford Motor Co.*, No. 2:18-CV-456, 2020 WL 12573279, at *8 n.5 (S.D. Tex. Nov. 2, 2020) ("The statutes of limitations for

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
9

1    fraud-by-omission, breach of implied warranty of merchantability, and Magnuson-Moss Warranty
2    Act are four years.") (citing Tex. Civ. Prac. & Rem. Code § 16.004(a)(4); Tex. Bus. & Com. Code
3    § 2.725(a)) *with* Cal. Civ. Proc. Code § 338(d) (three-year statute of limitations for an action for
4    relief on the ground of fraud or mistake).  This is a significant difference.

    At the second step, the Court must examine "each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists." *Kearney*, 39 Cal. 4th at 107.  Where a case concerns a California resident defendant, California is the only interested state. *Rustico v. Intuitive Surgical, Inc.*, 424 F. Supp. 3d 720, 728 (N.D. Cal. 2019) (citing *Ashland Chem. Co. v. Provence*, 129 Cal. App. 3d 790, 794 (1982)), *aff'd*, 993 F.3d 1085 (9th Cir. 2021); *see also Nelson v. Int'l Paint Co.*, 716 F.2d 640, 644 (9th Cir. 1983) (holding that "[o]nly California has an interest in having its statute of limitations applied" in a case with a California forum where the only defendant is a California resident). However, where, as here, the California resident is the plaintiff and not the defendant, California's interest in applying its own statute of limitations is weaker. *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 485 (9th Cir. 1987).  The alleged injury—the sale of a purportedly defective truck—occurred in Texas, and Texas has a strong interest in having its statute of limitations apply to cases involving foreign corporations' vehicle sales to Texas residents. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591–92 (9th Cir. 2012) (stating that "each state has a strong interest in applying its own consumer protection laws to" automobile sales within their borders); *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97–98 (2010) ("California choice-of-law cases nonetheless continue to recognize that a jurisdiction ordinarily has the 'the predominant interest' in regulating conduct that occurs within its borders . . . and in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future.").  Thus, a "true conflict" exists.

    At the third step, the Court concludes that Texas's interest would be more impaired if the Court were to apply California law.  Under California law, "[s]tatutes of limitation are designed to

protect the enacting state's residents and courts from the burdens associated with the prosecution of stale cases in which memories have faded and evidence has been lost." *Rustico*, 424 F. Supp. 3d at 728 (internal quotation marks omitted). But "although California has an interest in protecting its courts from stale claims, that interest is at least equally balanced by its interest in allowing its residents to recover for injuries sustained in a state that would recognize their claim as timely." *Ledesma*, 816 F.2d at 485. "California has little interest in applying its statute of limitations when no California defendant is involved and when California plaintiffs seek to recover for injuries that occurred in a state in which the claim was not time-barred." *Id.* at 486. In contrast, Texas's legitimate government policy would be impaired by a failure to allow a cause of action through which it could regulate vehicle sales to its residents. *Mazza*, 666 F.3d at 593 ("[E]ach foreign state has an interest in applying its law to transactions within its borders, and that if California law were applied . . ., foreign states would be impaired in their ability to calibrate liability to foster commerce.").

Accordingly, the Court finds that the governmental interest test favors application of Texas law.

### 2. Warranty choice of law provision

The Court next considers Ford's argument concerning the Warranty's choice of law provision.

"When an agreement contains a choice of law provision, California courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws . . . dictates a different result." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010) (internal quotation marks and citation omitted). "Under the Restatement approach, the court must first determine 'whether the chosen state has a substantial relationship to the parties or their transaction, . . . or whether there is any other reasonable basis for the parties' choice of law.'" *Id.* (quoting *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992)). If either of those tests is met, "the court must next determine whether the chosen state's law is contrary to a fundamental policy of California." *Id.*

(internal quotation marks and citation omitted). If such a conflict exists, the court must determine "whether California has a materially greater interest than the chosen state in the determination of the particular issue." *Id.* (internal quotation marks and citation omitted). "If California possesses the materially greater interest, the court applies California law despite the choice of law clause." *Id.* at 1003.

The party seeking to enforce the choice of law provision has the burden of demonstrating that the chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law. *See Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 917 (2001). If the proponent of the choice of law provision satisfies either test, the provision "generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue." *Id.*

Zwerling suggests that the Warranty's choice of law provision does not apply to him because he "never consented to the specific provision that was not disclosed to [him] until after he purchased his vehicle." Opp'n at 3 n.3. Other California district courts have rejected similar arguments in cases concerning warranties. *See, e.g.*, *Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1073 (N.D. Cal. 2020); *Han v. Samsung Telecomms. Am., LLC*, No. CV 13-3823-GW AJWX, 2013 WL 7158044, at *3–5 (C.D. Cal. Dec. 16, 2013). In particular, the *Rojas* court refused to permit plaintiffs to escape the choice of law provision in the very same warranty they sought to enforce. *Rojas*, 443 F. Supp. 3d at 1073. That court stated that it

> perceives no basis for Plaintiffs' assertion that they are not bound by the Limited Warranty's choice of law provision. Plaintiffs have cited no case supporting their position that they can take the parts of the Limited Warranty they like, leave behind the parts they dislike, and thereby enforce a warranty that [the Defendant] never offered to anyone. The Court concludes that to the extent Plaintiffs are entitled to enforce the Limited Warranty, they are bound by the choice of law provision contained therein.

*Id.* This reasoning applies to compel the same result here.

Zwerling relies on *Dorman v. Int'l Harvester Co.*, 46 Cal. App. 3d 11, 19–20 (1975) for

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
12

the proposition that the Warranty's choice of law provision is "irrelevant" because he did not consent to it before purchase. *Dorman* concerned a disclaimer of implied warranties in a sales contract, which is not at issue here. Zwerling provides no authority applying *Dorman* to a non-disclaimed limited express warranty such as the one before the Court. Zwerling further argues that he "was only aware of the terms of the express warranty when he purchased the Vehicle, and more importantly, such limitations do not apply to statutory causes of action," Opp'n 3 n.3, but he again offers no authority in support of that assertion.

For the reasons described above with respect to the governmental interest test, the Court finds that Ford has adequately demonstrated that Texas has a substantial relationship to the parties' transaction, and that a reasonable basis otherwise exists for applying Texas law. *See supra* Section III.B.1. Zwerling does not argue—and thus has not established—that applying Texas law is contrary to a fundamental policy of California or that California has a materially greater interest in the determination of his claims. *Wash. Mut.*, 24 Cal. 4th at 917.

Accordingly, under either the governmental interest test or the Restatement approach, Texas law should apply to Zwerling's claims.

### C. Statute of Limitations

Ford contends that both of Zwerling's claims are time barred and that no form of tolling applies. Mot. at 9–10, 13–20; Reply at 10–15. As discussed above, the statute of limitations for fraud by omission under Texas law is four years from the date the action accrues, and a claim for breach of warranty under the MMWA is likewise four years when a tender of delivery is made.[3] Tex. Civ. Prac. & Rem. Code § 16.004(a)(4); Tex. Bus. & Com. Code § 2.725(a)-(b) ("A cause of

---

[3] Texas Business & Commerce Code § 2.725(b) provides that "[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." However, the Texas Supreme Court has instructed courts to construe this future performance exception "narrowly, with the emphasis on the term 'explicitly.'" *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 548 (Tex. 1986). Because the Warranty does not reference a specific future date, the future performance exception does not apply here. *Id.* ("For an express warranty to meet the exception, it must make specific reference to a specific date.").

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
13

action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made . . . ."); *Stevens*, 2020 WL 12573279, at *8 n.5; *see also Click v. Gen. Motors LLC*, No. 2:18-CV-455, 2020 WL 3118577, at *13 (S.D. Tex. Mar. 27, 2020). Zwerling's claims accrued at the earliest on October 26, 2013, when he purchased his allegedly defective truck. Based on that accrual date, he was required to file suit by October 26, 2017; however, he did not file his initial complaint until May 6, 2019. Dkt. No. 1-2. Unless the Court finds some form of tolling applies, Zwerling's claims are time barred.

Zwerling argues that the equitable estoppel and delayed discovery doctrines apply to toll his claims.[4] Opp'n at 18–23. Despite alleging application of the repair rule or class action tolling[5], FAC ¶ 49, Zwerling does not invoke them in his opposition, and the Court therefore does not consider those theories.

### 1.     Equitable estoppel/fraudulent concealment

Zwerling's opposition cites the doctrine of equitable estoppel, but it appears that doctrine he actually seeks to apply is that of fraudulent concealment. *See* Opp'n at 18–19; *B. Mahler Interests, L.P. v. DMAC Constr., Inc.*, 503 S.W.3d 43, 54 n.4 (Tex. App. 2016) ("Because fraudulent concealment is based on the doctrine of equitable estoppel, and because [Plaintiff's] equitable estoppel and fraudulent concealment defenses are based on the same alleged conduct by [Defendant], we consider them together."). Fraudulent concealment tolls the limitations period until the plaintiff discovers the fraud or could have discovered it with reasonable diligence.

---

[4] Zwerling asserts these arguments based on California law, but as described above, the Court applies Texas law to his claims. *See supra* Section III.B.

[5] The Court observes that there is a pending class action in the Southern District of Texas concerning an alleged defect in Ford vehicles containing a 6.7L Power Stroke diesel engine and its fuel system for model years 2011 to the present. *Compare Stevens v. Ford Motor Co.*, No. 2:18-CV-456, 2020 WL 12573279, at *4 (S.D. Tex. Nov. 2, 2020) *with* FAC ¶¶ 6-7, 20 (describing Zwerling's purchase of a 2013 Ford F-350 Super Duty SRW truck with a 6.7L diesel engine). However, "Texas does not toll its limitations for a federal class action." *Mize v. BMW of N. Am.*, No. 2:19-CV-7-Z-BR, 2021 WL 6502099, at *8 (N.D. Tex. Oct. 1, 2021), *adopted by* 2021 WL 5979469 (N.D. Tex. Dec. 17, 2021).

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
14

1  *Adams v. Nissan N. Am.*, 395 F. Supp. 3d 838, 847 (S.D. Tex. 2018).  The elements of fraudulent

2  concealment are: (1) actual knowledge of the wrong, (2) a duty to disclose the wrong, and (3) a

3  fixed purpose to conceal the wrong.  *Id.*  A plaintiff must also plead facts that he failed, despite

4  due diligence, to discover the facts giving rise to the cause of action.  *Id.*  Some Texas courts have

5  required an additional element of the plaintiff's reasonable reliance on the deception.  *Id.* (citing

6  cases).

7          The Court finds that Zwerling has not adequately pled a duty to disclose the wrong.

8  Generally, no duty to disclose exists in an arms-length transaction between a manufacturer and

9  customer, particularly where a plaintiff did not purchase directly from the manufacturer.  *Id.* at

10  850; *Click*, 2020 WL 3118577, at *7.  Zwerling does not plead that he purchased his truck directly

11  from Ford.  *See* FAC ¶ 6 ("Plaintiff purchased the Vehicle from a person or entity engaged in the

12  business of manufacturing, distributing, or selling consumer goods at retail.").

13          Furthermore, "[u]nder Texas law, a duty to disclose in the context of fraudulent

14  concealment arises only in limited circumstances where there is a fiduciary or confidential

15  relationship."  *Adams*, 395 F. Supp. 3d at 849–50; *see also In re Gen. Motors LLC Ignition Switch*

16  *Litig.*, 257 F. Supp. 3d 372, 453 (S.D.N.Y. 2017) (applying Texas law).  Some Texas courts have

17  held that an affirmative duty to disclose may arise in four circumstances described in the

18  Restatement (Second) of Torts § 551: (1) where there is a fiduciary or confidential relationship

19  between the parties; (2) where a person voluntarily discloses information, the whole truth must be

20  disclosed; (3) when a person makes a representation and new information makes that earlier

21  misrepresentation misleading or untrue; and (4) when a person makes a partial disclosure and

22  conveys a false impression.  *In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, 540 F. Supp. 2d

23  759, 771 (S.D. Tex. 2007) (citations omitted); *see also Trustees of Nw. Laundry & Dry Cleaners*

24  *Health & Welfare Tr. Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994).  However, the Texas

25  Supreme Court and Fifth Circuit have expressly avoided adopting this list of circumstances from

26  section 551 of the Restatement of Torts.  *Click*, 2020 WL 3118577, at *8; *Bradford v. Vento*, 48

27  S.W.3d 749, 755–56 (Tex. 2001) ("We have never adopted section 551."); *see also In re Gen.*

28  Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
15

1  *Motors*, 257 F. Supp. 3d at 453 (fraudulent concealment claim cannot proceed absent fiduciary or

2  confidential relationship in view of Texas Supreme Court's ruling in *Bradford*). Zwerling does

3  not point to any allegations that would suggest that a fiduciary or confidential relationship

4  between him and Ford. Nor does his opposition cite any factual allegations in the FAC that

5  demonstrate a duty to disclose in the other circumstances described in the Restatement of Torts.

6  Accordingly, the Court finds that fraudulent concealment does not apply here to toll the

7  statute of limitations for either of Zwerling's claims.

### 2. Discovery rule

Under Texas law, the discovery rule applies to fraud claims but not to breach of warranty claims. *Geraghty & Miller, Inc. v. Conoco Inc.*, 234 F.3d 917, 931 (5th Cir. 2000) (citing *Martinez v. Humble Sand & Gravel, Inc.*, 940 S.W.2d 139, 147 (Tex. App. 1996), *aff'd sub nom. Childs v. Haussecker*, 974 S.W.2d 31 (Tex. 1998)), *abrogated on other grounds as recognized by Vine Street LLC v. Borg Warner Corp.*, 776 F.3d 312, 317 (5th Cir. 2015); *see also Safeway Stores*, 710 S.W.2d at 547, 549 (implied warranties do not extend into the future, so the discovery rule does not apply); *Click*, 2020 WL 3118577, at *14. The discovery rule therefore cannot apply to Zwerling's MMWA claim.

As to the fraud by omission claim, "in order for the Texas discovery rule to apply, the injury must be (1) 'inherently undiscoverable' and (2) 'objectively verifiable.'" *Brandan v. Howmedica Osteonics Corp.*, 439 F. App'x 317, 321 (5th Cir. 2011) (quoting *Barker v. Eckman*, 213 S.W.3d 306, 312 (Tex. 2006)); *see also Click*, 2020 WL 3118577, at *14. "'Inherently undiscoverable' requires that the existence of the injury is not ordinarily discoverable, despite the plaintiff's due diligence." *Steel v. Rhone Poulenc, Inc.*, 962 S.W.2d 613, 618 (Tex. App. 1997), *aff'd*, 997 S.W.2d 217 (Tex. 1999). "Facts upon which liability are asserted are 'objectively verifiable' when the plaintiff demonstrates direct, physical evidence." *Id.*

Although Zwerling's description of exactly what the Engine Defect consists of would benefit from more fulsome pleading, FAC ¶¶ 20, 22-23 (describing defect solely in terms of its effects), the Court finds that a defect within a vehicle's engine would not be easily discoverable by

an ordinary consumer. *See, e.g.*, *Click*, 2020 WL 3118577, at *14 (incompatibility of fuel pump with U.S. diesel fuel was a defect no ordinary consumer could easily discover); *Stevens*, 2020 WL 12573279, at *10 (same). Zwerling pleads that he was not aware of the Engine Defect at the time of sale and that he could not have known about the defect until he had made a reasonable number of attempts to repair it. FAC ¶¶ 37, 39. Additionally, Zwerling alleges that he had to take his truck in for repairs seven times between the time of purchase and the filing of his original complaint. *Id.* ¶¶ 8-15. The parts that required replacement were those that concerned or were related to the engine. *Id.* These allegations provide sufficient physical evidence that the truck had some persistent engine-related defect. The fact that Zwerling's first repair occurred a mere six days after purchase, the second repair approximately two and half months after purchase, and the final three repairs within less than three weeks of each other certainly suggests some kind of continuing problem or defect.

Accordingly, the Court finds that the discovery rule applies to toll Zwerling's fraud by omission claim to October or November 2018, when the last three repairs took place over a period of less than two weeks and included numerous part replacements. *Id.* ¶¶ 13-15.

### D.     Failure to State a Claim

Ford argues that Zwerling has failed to state a claim for both fraud by omission and under the MMWA. Because the Court has determined that Zwerling's MMWA claim is time barred, the Court addresses only the fraud by omission claim.

Under Texas law, the elements of fraud by nondisclosure are: (1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to disclose those facts; (3) the facts were material; (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (5) the defendant was deliberately silent when it had a duty to speak; (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (7) the plaintiff relied on the defendant's nondisclosure; and (8) the plaintiff was injured as a result of acting without that knowledge. *Parker v. Spotify USA, Inc.*, --- F. Supp. 3d ----, 2021 WL 6750851, at *10–11 (W.D. Tex. 2021).

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
17

"Fraud by omission or non-disclosure is simply a subcategory of fraud because the omission or non-disclosure may be as misleading as a positive misrepresentation of fact when a party has a duty to disclose." *Id.* (internal quotation marks omitted).

As discussed above, Zwerling does not plead facts from which the Court may infer that Ford had a duty to disclose the alleged Engine Defect. *See supra* Section III.C.2. Accordingly, the Court finds that he has failed to state a claim for fraud by omission under the lower Rule 12(b)(6) standard, and the Court thus need not address whether he has satisfied Rule 9(b)'s standard for pleading particularity.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the parties' requests for judicial notice, and GRANTS Ford's motion for judgment on the pleadings with leave to amend to address the deficiencies described above. Zwerling shall file his amended complaint by **April 4, 2022**.

**IT IS SO ORDERED.**

Dated: March 14, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
18