UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHILIP ZWERLING,<br><br>    Plaintiff,<br><br> v.<br><br>FORD MOTOR COMPANY,<br><br>    Defendant. | Case No. 5:19-cv-03622-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 137 |

Plaintiff, Philip Zwerling ("Zwerling"), asserts claims against Defendants Ford Motor Company ("Ford") and Does 1-10 for (1) violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 et seq. ("DTPA"), (2) breach of express warranty, (3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. ("MMWA"), and (4) fraud by affirmative misrepresentation and/or failure to disclose material facts based on partial disclosure. Third Am. Compl. ("TAC"), ECF No. 130. The Court has twice dismissed Zwerling's complaint with leave to amend. *See* Order Granting Motion to Dismiss ("Prior Order"), ECF No. 127; Order Granting Mot. for J. on the Pleadings, ECF No. 97. Now before the Court is Ford's motion to dismiss the third amended complaint for failure to state a claim under Federal Rule of Procedure 12(b)(6). Mot. to Dismiss ("MTD"), ECF No. 136. Zwerling filed an opposition, and Ford filed a reply. Opp'n to MTD ("Opp'n"), ECF No. 146; Reply in Supp. of MTD ("Reply"), ECF No. 147.

Having carefully reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Court **GRANTS** Ford's motion to dismiss with prejudice.

## I. BACKGROUND

### A. Factual History

This is the third time that the Court has considered Zwerling's pleadings. *See* Prior Order; Order Granting J. on the Pleadings. In the interest of brevity, the Court will not reiterate all the facts previously summarized in its prior orders.

On October 26, 2013, Zwerling purchased an F-350 Super Duty SRW diesel-engine vehicle ("Subject Vehicle") manufactured by Ford and alleges that the Subject Vehicle contained one or more defects in its diesel engine or exhaust system (the "Exhaust System Defect"). TAC ¶¶ 5–7. The Exhaust System Defect purportedly caused the Subject Vehicle's exhaust system to clog and led to reduced engine performance or loss of engine power. *Id.* ¶ 25. Before Zwerling purchased the Subject Vehicle, he reviewed marketing and promotional materials from Ford, which failed to disclose the Exhaust System Defect. *Id.* ¶ 9. According to Zwerling, he would not have purchased his F-350 if Ford had disclosed the Exhaust System Defect. *Id.* ¶¶ 7, 9, 13.

Zwerling alleged facts showing a long repair history. *Id.* ¶¶ 35–50. The allegations regarding that history have largely not changed. *Compare id., with* Second Am. Compl. ¶¶ 27–43 ("SAC"), ECF No. 126. The third amended complaint includes only a single new allegation that Zwerling brought the Subject Vehicle to the dealer on May 6, 2022, pursuant to a recall notice regarding dashboard lights. *Id.* ¶ 50. Zwerling does not state what happened at the dealer, just that he brought the car into the dealer. *Id.*

In sum, Zwerling summarizes fifteen visits to the repair facility spanning between 2013 and 2022. Seven of those visits were for routine maintenance. *Id.* ¶¶ 37, 39–42, 44, 49. Two of those visits were in response to recall notices, though Zwerling does not allege what happened at the repair facility during these visits, i.e., if the technician made any repairs. *Id.* ¶¶ 38, 50. One of those visits concerned a coolant leak issue and resulted in a water pump replacement. *Id.* ¶ 45. The remaining five visits concerned issues with the exhaust system. *Id.* ¶¶ 35, 36, 43, 46, 48. The last exhaust system-related repair was on November 5, 2018. *Id.* ¶ 48. Zwerling alleges that he was only charged the costs of refilling diesel exhaust fluid during these visits. *See id.* ¶¶ 35–50.

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOTION TO DISMISS
2

Following that sequence of repairs, on January 30, 2019, Zwerling contacted Ford to request that it buy back the Subject Vehicle under its lemon law obligations. *Id.* ¶ 53. When Ford refused, he then reached out to Ford's BBB Autoline program in April 2019, but that program declined to assist Zwerling as well, citing the Subject Vehicle's age. *Id.* ¶¶ 54–55.

### B. Procedural History

On May 6, 2019, Zwerling filed this action in the Superior Court for the County of Santa Clara. Compl., ECF No. 1-2. On June 21, 2019, Ford removed the action to this Court. Notice of Removal, ECF No. 1.

The parties stipulated to amendment, and on May 18, 2021, Zwerling filed his First Am. Compl. ("FAC"), ECF No. 39. Among other amendments, Zwerling added a new claim for violation of the MMWA. *Compare* FAC, *with* Compl. After answering, Ford moved for judgment on the pleadings, and on March 14, 2022, the Court granted its motion with leave to amend. Answer to FAC, ECF No. 41; Mot. to Dismiss FAC, ECF No. 42; Order Granting J. on the Pleadings.

Zwerling filed the second amended complaint on April 4, 2022, adding new claims for breach of express warranty and violation of the DTPA. *Compare* SAC, *with* FAC. On April 19, 2022, Ford filed a motion to dismiss, which the Court granted on April 10, 2023. Prior Order. The Court dismissed the fraud by omission and breach of implied warranty claims with prejudice on the grounds that Zwerling failed to cure the deficiencies identified in the Court's order granting judgment on the pleadings. *Id.* at 12. The Court dismissed the new claims for breach of express warranty and violations of the DTPA with leave to amend. *Id.* The Court found that Zwerling failed to plead a breach of express warranty on the ground that the warranty excluded the fluids that Zwerling purchased at the repair shop, and Zwerling failed to plead the who, what, where, when, and how required for his fraud claims under the DTPA. *Id.* at 11–12.

Zwerling filed the now operative third amended complaint on May 2, 2023, alleging: (1) violation of the DTPA, (2) breach of express warranty, (3) violation of the MMWA, and (4) fraud by affirmative misrepresentation and/or failure to disclose material facts based on partial

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOTION TO DISMISS
3

1   disclosure. Ford filed its present motion to dismiss on June 6, 2023.

## II.     LEGAL STANDARD

A motion to dismiss for failure to state a claim "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, but courts are not required to accept conclusory allegations as true. *Ashcroft*, 556 U.S. at 678.

Claims sounding in fraud must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-03 (9th Cir. 2003); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1084 (N.D. Cal. 2018). Under Rule 9(b), a party "must state with particularity the circumstances constituting fraud." Typically, Rule 9(b) requires the party alleging fraud to plead "the who, what, when, where, and how" of the misconduct. *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). For claims based on fraudulent omissions, the Rule 9(b) standard is "somewhat relaxed," *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1122 (C.D. Cal. 2021) (quoting *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013)), but a plaintiff must still "describe the content of the omission and where the omitted information should or could have been revealed." *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1012 (N.D. Cal. 2021) (quoting *Sims v. Kia Motors Am., Inc.*, No. SACV 13-1791-AG (DFMx), 2014 WL 12558251, at *4 (C.D. Cal. Oct. 8, 2014)).

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOTION TO DISMISS

4

## III.  DISCUSSION

The Court will discuss Zwerling's claims under three categories: (1) express warranty claims, (2) DTPA claims, and (3) the final claim for fraud by affirmative misrepresentation and/or failure to disclose material facts based on partial disclosure.

### A.  Express Warranty Claims

The Court finds that Zwerling has failed to allege additional facts to cure the deficiencies identified in the Court's Prior Order.

Zwerling has alleged a breach of express warranty under the DTPA, common law express warranty, and MMWA.  TAC ¶¶ 60.b., 71–84, 85–96; *see* Tex. Bus. & Com. Code § 2.313 (defining express warranty); *Id.* § 17.50(a)(2) (providing an action for breach of express warranty); *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 802 (N.D. Cal. 2019) ("[C]laims under the Magnuson-Moss Act 'stand or fall with . . . express and implied warranty claims under state law.'") (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)).  In all three claims, Zwerling must plead facts to show that an express warranty existed, and Ford failed to make the repairs covered under the warranty.  *See id.*

Zwerling alleges that he had an express warranty from Ford which "provided, in relevant part, that in the event of a defect developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for repair services to Defendant's representative and the Vehicle would be repaired."  Opp'n 2.  All warranty repairs and adjustments were to be made at no charge.  *Id.* at 3; TAC ¶ 17.  Zwerling alleges that Ford breached its duty under this express warranty because it was unable to repair the Exhaust System Defect during the warranty period.  TAC ¶¶ 15, 16, 25, 51.

Despite Zwerling's legal conclusion that Ford breached its duty under the express warranty, Zwerling's complaint alleges facts showing that Ford did reimburse Zwerling for the repairs covered under the warranty.  *See, e.g.,* TAC ¶¶ 45 ("Plaintiff [paid] $1,203.83 on this visit, which Ford subsequently considered to be a warranty repair and reimbursed Plaintiff for this issue."), 48 ("Defendant's technician removed and inspected the DEF tank and replaced the

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOTION TO DISMISS

5

reductant sender under warranty); *see also id.* ¶¶ 35 (not alleging that Zwerling paid for the DEF line replacement), 36 (not alleging that Zwerling paid for the exhaust gas temperature sensor and pigtail replacement), 43 (not alleging that Zwerling paid for the check engine light repair); *compare with id.* ¶¶ 39–42, 44, 49 (specifically alleging each time Zwerling was charged for fluids).

Zwerling's allegations that these repairs did not cure the defect is unsupported by facts in his complaint—Zwerling alleges that his last repair (which was covered under the warranty) was in 2018, and there are no facts indicating that he has experienced any defects since that last repair. Sometime[1] after the 2018 repair, Zwerling took the Subject Vehicle to the repair shop because of concerns about regeneration, but upon inspection, the technician noted "no concerns" with the regen mode or soot levels in Zwerling's car, adding in that the "customer may have noticed that vehicle does not go into regen as often due to *improvements* to PCM programming." TAC ¶ 39 (emphasis added). Notably, Zwerling did not allege that he experienced issues with regeneration, only that he had concerns "based on past experiences." *Id.* Zwerling returned once more pursuant to a recall notice regarding his dashboard diagnostic system on May 6, 2022, but Zwerling's recount of this visit ends there—he does not indicate that the technician found anything wrong with the Subject Vehicle during this visit. *Id.* ¶ 50. Ultimately, Zwerling does not allege that a defective part was presented for repair more than once, does not allege that he personally experienced continued issues with his exhaust system, and importantly, does not allege that he attempted to receive a repair covered under warranty but was denied that repair in breach of that warranty.[2]

---

[1] Zwerling claims to have presented the Subject Vehicle to the repair shop on October 17, 2018, with approximately 38,016 miles on the odometer, to have his regen and soot levels checked. TAC ¶ 49. However, Zwerling also claims to have gone to the technician the next month, on November 5, 2018, with approximately 31,640 miles to receive a repair, which was refunded under the warranty. *Id. ¶* 50. The changes in the milage leads the Court to assume that this is a Scribner's error, but the Court cannot find other context to assume which dates Zwerling meant to state.

[2] Zwerling relies heavily on *Llort v. BMW of N. Am., LLC*, No. 1:20-CV-94-LY, 2020 WL 2928472 (W.D. Tex. June 2, 2020), to argue he has met his low pleading standard to show a breach of express warranty. However, in *Llort*, the plaintiff alleged that he provided the defendant

Zwerling also repeats his previously rejected argument that Ford breached its express warranty by not reimbursing Zwerling for topping off his fluids. TAC ¶ 48 ("Defendant added DEF Fluid and charged Plaintiff approximately $117, even though this repair should have been covered under warranty."); Opp'n 5. The Court found in its Prior Order that the replacement of diesel exhaust fluid plainly fell within the emission warranty's exclusion, therefore Ford did not breach any express warranty by not covering those refills. Prior Order 11. Zwerling's argument is rejected here for the same reasons. However, even if the Court found that these fluids were covered under the warranty, Zwerling never alleges that he attempted to have these costs reimbursed under the warranty but was denied.

The Court therefore **GRANTS** Ford's motion to dismiss Zwerling's claims for breach of express warranty under the DTPA, common law express warranty, and the MMWA.[3]

### B.     Violations of the Texas Deceptive Trade Practices Act ("DTPA")

To state a claim for a violation of the DTPA, a plaintiff must show that (1) she was a consumer; (2) the defendant violated a specific "laundry-list" provision of the DTPA or engaged in an unconscionable action or course of action; and (3) the laundry-list violation or unconscionable action caused her injury. *Bus. Staffing, Inc. v. Jackson Hot Oil Serv.*, 401 S.W.3d 224, 236 (Tex. App. 2012). Causes of action arising under DTPA must satisfy Rule 9(b), which reaches all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud. *Omni USA Inc v Parker-Hanifin*, 798 F. Supp. 2d 831 (S.D. Tex. 2011).

Zwerling alleges that Ford violated the following laundry-list DTPA provisions:

> a.   §17.50(1): **the use or employment of a false, misleading, or deceptive acts or practices** as defined in §17.46(b)(5), §17.46(b)(6), §17.46(b)(7), §17.46(b)(9), §17.46(b)(12), §17.46(b)(13),  §17.46(b)(20),  §17.46(b)(22)  and

---

with notice of a defect covered under the warranty for repair, and the defendant failed to make repairs covered under the warranty. *Llort*, 2020 WL 2928472, at *8. Here, Zwerling has not pled that he even requested a repair covered under warranty that was denied.

[3] Given that the Court dismisses these claims on the merits, the Court will not address Ford's arguments regarding notice deficiencies.

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOTION TO DISMISS
7

      §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiff;
  b. §17.50(2): **breach of express warranty**, as defined in §2.313 of the TEX. BUS. & COM. CODE (the warranty failed of its essential purpose and Plaintiffs were deprived of substantial value of bargain because the defect was not corrected within reasonable time); and
  c. §17.50(3): **an unconscionable action or course of action** as defined by §17.45(5).

TAC ¶ 60 (emphasis added). The Court has already dismissed Zwerling's breach of express warranty claim. The Court will now address the two remaining provisions.

### 1. False, Misleading, or Deceptive Acts or Practices

The Court finds that Zwerling has failed to allege additional facts to cure the deficiencies identified in the Court's Prior Order.

Zwerling's third amended complaint alleges the following: "Ford's statements[4] that the subject vehicle's defects would be and had been repaired misrepresented the characteristics, uses, benefits, standard and quality of Ford's services. For this reason, these representations were false, misleading, and deceptive." TAC ¶ 61.

And yet, as Ford highlights, Zwerling does not allege any facts regarding Ford's statements about repairs. He does not allege what was said, when, where, or by whom. The only statements found in the complaint regarding repairs to the Subject Vehicle alleged are from Ford's authorized repair facility. However, Zwerling has not alleged, or provided any authority in its opposition to support a possible assertion, that dealership representatives' statements may be imputed to Ford. In this way, Zwerling has failed to cure the Court's prior finding that Zwerling's vague allegations about Ford's representations failed to provide the "the who, what, when, where, and how" of the alleged false representations. Prior Order 12.

Though not relied upon to support this claim,[5] and though wholly unrelated to repairs, the

---

[4] Notably, Zwerling does not argue that Ford's omissions constitute a violation of this provision, only affirmative statements. All allegations regarding omissions are found in the fourth claim for fraud by affirmative misrepresentation and/or failure to disclose material facts based on partial disclosure. TAC ¶¶ 92, 107.

[5] Zwerling relies on these facts in the third amended complaint only to support his claim for fraud by affirmative misrepresentation and/or failure to disclose material facts based on partial disclosure, discussed below. However, Ford analyzed these facts in its DTPA arguments, so the

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOTION TO DISMISS

8

1  Court notes that the third amended complaint's factual background section includes other
2  statements made by Ford. For example, Zwerling alleges that Ford's advertising material included
3  statements such as "Best in Class." TAC ¶¶ 9, 10, 14. Given the Exhaust System Defect,
4  Zwerling argues that the statement "Best in Class" was false, and he relied on this false
5  representation in purchasing the Subject Vehicle. TAC ¶ 10; Opp'n 16. Ford argues that this
6  statement is mere puffery, not an actionable misrepresentation. MTD 6–7. Zwerling does not
7  respond to this argument in his opposition.[6] The Court joins numerous other district courts across
8  the country in finding that "best in class" in advertising material is nonactionable puffery. *See,*
9  *e.g., Phoenix Ins. Co. v. ATI Physical Therapy, Inc.*, No. 1:21-CV-04349, 2023 WL 5748359, at
10 *6 (N.D. Ill. Sept. 6, 2023) (finding best in class description to be nonactionable puffery); *White v.*
11 *FCA US LLC*, No. 22-CV-00954-BLF, 2022 WL 3370791, at *5 (N.D. Cal. Aug. 16, 2022)
12 (same); *Lowthorp v. Mesa Air Grp. Inc.*, No. CV-20-00648-PHX-MTL, 2021 WL 3089118, at *8
13 (D. Ariz. July 22, 2021) (same); *Finney v. Ford Motor Co.*, No. 17-CV-06183-JST, 2018 WL
14 2552266, at *8 (N.D. Cal. June 4, 2018) (same); *In re Ferrellgas Partners, L.P., Sec. Litig.*, No.
15 16 Civ. 7840, 2018 WL 2081859, at *11–12 (S.D.N.Y. Mar. 30, 2018) (same).
16  Zwerling also notes additional statements in the marketing material such as "Cleanest
17 Super Duty diesel ever" and "Masters the Heaviest Loads"; however, Zwerling does not allege
18 that he relied upon these statements in purchasing the Subject Vehicle. *See* TAC ¶¶ 9, 13;
19 *compare with id.* ¶ 10 (only alleging that he relied on the statement "Best in Class") and Opp'n 2
20 (listing the other statements and only arguing that Zwerling relied on "Best in Class"). The same
21 applies to Zwerling's allegation that the "Vehicle Emission Control Information" label located on
22 the Vehicle falsely represents that the Subject Vehicle complies with California's ULEV II MDV
23 emissions standards and that the Subject Vehicle is a "50-state" certified vehicle. TAC ¶ 19.
24 Zwerling never alleges that he detrimentally relied on this statement in purchasing the Subject

---

[6] Zwerling only argues that that statements in the "Vehicle Emission Control Information" are too specific to be considered puffery. Opp'n 1. Court briefly will address them here as well.

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOTION TO DISMISS
9

Vehicle—or that he was even aware of this statement prior to his purchase.

### 2. Unconscionable Action

Zwerling did not plead unconscionable action in his prior complaint,[7] but the Court finds that Zwerling has failed to allege facts sufficient to state a claim for relief under this provision as well.

Zwerling's third amended complaint alleges the following: "Defendant Ford's acts or practices in the selling and/or repairing of the Subject Vehicle to Plaintiff were unconscionable actions or courses of action because they took advantage of Plaintiff's lack of knowledge, ability, experience, or capacity of the Plaintiff's to a grossly unfair degree." TAC ¶ 62.

As an initial matter, Zwerling has failed to plead a single fact regarding his lack of knowledge, ability, experience or capacity. To the contrary, Zwerling alleges that he "considered, reviewed, and accessed Ford's website and written brochures" prior to purchasing the Subject Vehicle. *Id.* ¶ 7–8. The only facts alleged that get close to suggesting a lack of knowledge, ability, experience, or capacity are that he "was not provided any training or information prior to purchasing the vehicle." TAC ¶¶ 6, 11. However, Zwerling has provided no argument or authority to suggest that he required training to possess the knowledge, ability, experience, or capacity to purchase the Subject Vehicle. It necessarily follows that Zwerling has failed to plead facts that show *how* Ford took advantage of his lack of knowledge, ability, experience, or capacity "to a grossly unfair degree."

\* \* \*

The Court therefore **GRANTS** Ford's motion to dismiss Zwerling's DTPA claims.[8]

### C. Fraud by Affirmative Misrepresentation and/or Failure to Disclose Material Facts Based on Partial Disclosure

Zwerling has essentially changed the title of his former claim for fraudulent omission,

---

[7] Ford does not argue that Zwerling's claim under the unconscionable action provision should be dismissed on the ground that it is a new claim.

[8] Given that the Court dismisses these claims on the merits, the Court will not address Ford's request to abate these claims due to notice deficiencies under Tex. Bus. Com. Code, § 17.505(a).

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOTION TO DISMISS
10

1  which the Court dismissed with prejudice, to "fraud by affirmative misrepresentation and/or

2  failure to disclose material facts based on partial disclosure," with a few minor edits. *Compare*

3  TAC ¶¶ 97–123, *with* SAC 59–85, ECF No. 126.

4       The Court did not give Zwerling leave to add this claim. The Court specifically granted

5  leave to cure the deficiencies identified in the claims for breach of express warranty and violation

6  of the DTPA, and the MMWA claim to the extent it is based on breach of express warranty. Prior

7  Order 12.

8       The Court has already provided Zwerling leniency on this subject in the past. In his prior

9  amended complaint, Zwerling added a new claim without leave from the Court. The Court agreed

10  to "construe[] Zwerling's opposition as a belated motion for leave to amend" on the ground that

11  "Zwerling did not have the benefit of the Court's choice-of-law ruling when he made earlier

12  amendments to his complaint, and the new claims that he added to the SAC are based on the same

13  facts as his fraud by omission and MMWA claims in the FAC." Prior Order 4–5. Now, Zwerling

14  has again added a new claim without leave from the Court. But this time, Zwerling did have the

15  benefit of the Court's choice-of-law ruling, and the new claims allege facts not used to support

16  another claim that the Court granted leave to amend, but instead based (almost exactly) on the

17  same facts as his former fraud by omission claim, which the Court had dismissed with prejudice.

18       While, as the Court acknowledged in its Prior Order, the Federal Rules call for liberal

19  amendment of pleadings, courts have repeatedly held that plaintiffs may not add new claims when

20  a previous order granted leave to amend to correct specific deficiencies. *See* Prior Order 4–5

21  (summarizing case law). Here, the circumstances have changed since the Court's Prior Order, and

22  the Court declines Zwerling's request to once again construe his opposition as a belated motion for

23  leave to amend.[9]

---

[9] Even if the Court did consider this claim, the Court found above that the statements Zwerling relies on are either nonactionable puffery or were not pled to have been relied upon in purchasing the vehicle. Further, Zwerling has added no additional facts to cure the deficiencies the Court has twice now identified in its omission theory. *See* Prior Order 10; Order Granting J. on the Pleadings 15–16.

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOTION TO DISMISS
11

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Ford's motion to dismiss Zwerling's complaint in its entirety with prejudice. As this is Zwerling's third time failing to cure deficiencies identified by the Court, the Court finds that it has provided Zwerling ample opportunities to cure his complaint and has determined that the pleading could not possibly be cured by the allegation of other facts. *Lopez*, 203 F.3d at 1127. The Clerk of the Court is instructed to close this file.

**IT IS SO ORDERED.**

Dated: January 2, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 5:19-cv-03622-EJD
ORDER GRANTING MOTION TO DISMISS
12